**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Columbia Park Business Center Corporation and 679 East Third Street Investors Company,

Plaintiffs,

Civ. No. 01-1757 (RHK/JMM)
**MEMORANDUM OPINION AND ORDER**

v.

Uriel Perez, William McCarthy, Martin Goff, and Nancy Goldman,

Defendants.

---

David A. Lutz, The Wirth Companies, Minneapolis, Minnesota, for Plaintiffs.

Robert D. Metcalf, Metcalf, Kaspari, Howard, Engdahl, & Lazarus, P.A., Minneapolis, Minnesota, for Defendants.

---

## Introduction

The Plaintiffs are, respectively, the tenant and the owner of property in downtown Minneapolis known as the Grand Hotel Minneapolis ("Grand Hotel"). In their Amended Complaint, Plaintiffs allege that on August 16, 2001, the Defendants -- members and full-time employees of the Hotel Employees and Restaurant Employees Union, Local 17 ("Local 17" or "Union") -- trespassed at the hotel, intentionally interfered with Plaintiff Columbia Park Business Center Corporation's ("Columbia Park") contractual relations with hotel employees, and breached two provisions of a collective bargaining agreement



APR 1 2 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD APR 1 2 20
DEPUTY CLERK

between Columbia Park and Local 17. (Am. Compl. ¶¶ 10-44.) Before the Court is the Defendants' Motion for Summary Judgment. For the reasons set forth below, the Court will grant the motion.

**Background**

Plaintiff 679 East Third Street Investors Company ("679 East Third") allegedly owns real property in downtown Minneapolis that was formerly the site of the Minneapolis Athletic Club and is now the site of the Grand Hotel. (Am. Compl. ¶ 4.) Plaintiff Columbia Park is the tenant of the property and operates the hotel. (Id. ¶ 5.) Defendants Uriel Perez, Nancy Goldman, Martin Goff, and William McCarthy are members and full-time employees of Local 17, working in various capacities.[1]

The following facts appear to be undisputed. In 1998 Columbia Park was doing business as the Minneapolis Athletic Club at the real property in question. (See Goldman Aff. Ex. 1 (Collective Bargaining Agreement).) Columbia Park and Local 17 were parties to a Collective Bargaining Agreement ("CBA") effective for the period from May 20, 1998, to June 1, 2000. (Id.) The CBA expired on June 1, 2000, and has not been

[1] William McCarthy works for Local 17 as a business agent; he is also an officer of Local 17, serving as President of the local chapter. (McCarthy Aff. ¶ 1.) Martin Goff works for Local 17 as the Director of Organization; he is also an officer of Local 17, serving as Vice President. (Goff Aff. ¶ 1.) Uriel Perez works for Local 17 as business agent and organizer. (Perez Aff. ¶ 1.) Nancy Goldman works for Local 17 as a business agent and serves as an officer of the local chapter on the Executive Board at Large. (Goldman Aff. ¶ 1.)

replaced with a successor CBA. (Goldman Aff. ¶ 5.) The parties have continued to negotiate in an attempt to reach agreement on a new CBA.[2] (Id. ¶ 6.)

Article 21 of the CBA, entitled "Club Visitation by Business Agents" provides that "[b]usiness representatives of the Union shall be privileged to visit the Club at reasonable hours for the transaction of official business, but they shall register with the office of the General Manager or a designated representative upon entering the premises." (Goldman Aff. Ex. 1.) Article 4 of the CBA includes a "Management's Rights Clause" stating that "[t]he Employer and the Union specifically agree that management shall have the right to direct the work force and to determine the policies and methods of operating its business, except as expressly limited by the specific provisions of this Agreement." (Id.)

On July 1, 2000, after a seven-month closure, Columbia Park reopened the property as the Grand Hotel. (Goldman Aff. ¶ 4.) On November 1, 2000, Nancy Goldman, a business agent for Local 17, received a letter advising her that if she or other employees of the union "are asked to leave due to unauthorized visits and . . . do not immediately leave, The Grand Hotel deems that to be a tresspass."[3] (Am. Compl. ¶ 9, Answer to Am. Compl. ¶ 10.) The letter further "demand[ed] that [Goldman] register with the office of the Human Resources upon entering the premises in accordance with Article 21 of the CBA." (Id.)

---

[2] The last negotiating session was November 16, 2001. (Goldman Aff. ¶ 6.)

[3] Although the Amended Complaint indicates that the letter is attached as "Exhibit B," there are no exhibits attached to the Amended Complaint.

On August 16, 2001, the Defendants went to the Grand Hotel for a scheduled meeting with the employees.[4] (Am. Compl. ¶ 14; Answer to Am. Compl. ¶ 15.) When the Defendants arrived at the hotel, Mark Peregory, the managing director of Columbia Park, inquired into the nature of their business there. (Am. Compl. ¶ 13; Answer to Am. Compl. ¶ 14.) Upon learning from the Defendants that they had a scheduled meeting with employees, Peregory responded that he had no knowledge of such a meeting. (Am. Compl. ¶ 15; Answer to Am. Compl. ¶ 16.) The Defendants proceeded by elevator to the fifth floor of the hotel. (Am. Compl. ¶ 20; Answer to Am. Compl. ¶ 21.) David Bourdeau, the Director of Operations for Columbia Park, followed the Defendants to the fifth floor. (Am. Compl. ¶ 23; Answer to Am. Compl. ¶ 24.) The Defendants then proceeded up to the sixteenth floor to hold their meeting with employees. (Am. Compl. ¶ 24; Answer to Am. Compl. ¶ 25.) Officers from the Minneapolis Police Department were called to the hotel; the officers asked the Defendants to leave the premises and they complied. (Am. Compl. ¶ 25; Answer to Am. Compl. ¶ 26.)

On October 31, 2001, Columbia Park filed with the National Labor Relations Board ("NLRB") an unfair labor practice charge against Local 17 that included the events August 16, 2001. (Goff Aff. Ex. 1 (NLRB charge).) Columbia Park complained that the Union induced and encouraged the employees to leave their assigned work stations for a

---

[4] Neither the pleadings nor any of the affidavits submitted in connection with the pending motion indicate the time of day at which the Defendants arrived at the hotel or for how long they remained.

meeting at an "unreasonable" time, causing Columbia Park to pay money for services that were not performed. (Id.) Columbia Park asserted that this conduct violated Articles 4 and 21 of the CBA, quoted above. (Id.) On January 28, 2002, the Regional Director for the NLRB wrote a letter advising general counsel for Columbia Park that (1) there was insufficient evidence to support a finding of a violation of § 8(b)(6) of the NLRA,[5] and (2) he was refusing to issue a complaint with respect to that allegation. (Goff Aff. Ex. 2.)

On February 6, 2002, Local 17 filed an unfair labor practice charge with the NLRB against Columbia Park regarding the events August 16, 2001. (Goff Aff. Ex. 3 (NLRB charge).) Local 17 complained that Columbia Park interfered with the employees' right to meet with their union representatives regarding the status of collective bargaining and, in so doing, unilaterally changed the terms and conditions of employment permitting union representatives access to the workplace to conduct union business. (Id.) On March 6, 2002, the Regional Director for the NLRB wrote a letter advising Local 17 that, after investigating the charge of an unfair labor practice, "there is insufficient evidence that the Employer violated the Act." (Lutz Aff. Ex. 1.) Accordingly, the Regional Director was refusing to issue a complaint with respect to that allegation. (Id.)

---

[5] Section 8(b)(6) of the NLRA provides that it is an unfair labor practice for a labor organization or its agents "to cause or attempt to cause an employer to pay or deliver or agree to pay or deliver any money or other thing of value, in the nature of an exaction, for services which are not performed or not to be performed." 29 U.S.C. § 158(b)(6).

## Analysis

### A. Standard of Decision

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The Court views evidence and the inferences which may be reasonably drawn from it in the light most favorable to the nonmoving party. See Enterprise Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996); see also Adkinson v. G.D. Searle & Co., 971 F.2d 132, 134 (8th Cir. 1992). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. See Enterprise Bank, 92 F.3d at 747; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party must demonstrate the existence of specific facts that create a genuine issue for trial; mere allegations or denials are not enough. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. See Liberty Lobby, 477 U.S. at 250.

The Court does not weigh facts or evaluate the credibility of affidavits and other evidence on a motion for summary judgment. The nonmovant, however, cannot avoid summary judgment in favor of the movant merely by pointing to some alleged factual dispute between the parties. Instead, any fact alleged to be in dispute must be "outcome determinative under prevailing law," that is, it must be material to an essential element of

the specific theory of recovery at issue. See Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992). Essentially, the Court performs the threshold inquiry of determining whether there is need for a trial. See Liberty Lobby, 477 U.S. at 250.

The Defendants seek summary judgment on Plaintiffs' Amended Complaint on several grounds. First, the Defendants argue that § 301(b) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(b), precludes the recovery of damages from union agents and members for conduct undertaken on behalf of their union. Second, the Defendants contend, Columbia Park cannot establish the existence of a binding collective bargaining agreement on which to base its breach of contract claims. Third, the Defendants assert that § 301(a) of the LMRA, 29 U.S.C. § 185(a), preempts Columbia Park's state tort claim for tortious interference with contractual relations. Finally, the Defendants argue that the Plaintiffs' trespass claim is subject to Garmon preemption[6] because the conduct at issue involves arguably protected or arguably prohibited conduct under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158. The Court begins with whether the Plaintiffs can recover damages from the Defendants under § 301(b) of the LMRA.

## B. Dismissal of Claims Seeking the Recovery of Money Damages

The Defendants seek a judgment dismissing Counts II through IV of the Amended Complaint on the grounds that § 301(b) of the LMRA precludes damages actions against

---

[6] San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959).

union officers and agents for acts performed on the union's behalf. With respect to each of Counts II through IV, the Plaintiffs pray for a judgment "in favor of Columbia [Park] against Defendants . . . in an amount not to exceed $50,000."[7] (Am. Compl. at 9.)

Section 301(b) provides that "[a]ny money judgment against a labor organization ... shall not be enforceable against any individual member or his assets." 29 U.S.C. § 185(b). "When Congress passed § 301, it declared its view that only the union was to be made to respond for union wrongs, and that the union members were not to be subject to levy." Atkinson v. Sinclair Refining Co., 370 U.S. 238, 247 (1962). "Section 301(b) immunity extends to union agents." Breda v. Scott, 1 F.3d 908, 908-09 (9th Cir. 1993) (citing Atkinson, 370 U.S. at 247-48).

Plaintiffs do not dispute the accuracy of the rule of law articulated by the Defendants. Rather, they assert that § 301(b) does not preclude damage claims where "the conduct involved is ***outside the scope*** of conduct undertaken on behalf of their union

---

[7] With respect to Count I of the Amended Complaint, alleging trespass to land in violation of Minnesota common law, the Plaintiffs pray for a judgment "in favor of Plaintiffs against Defendants . . . and injunctive relief." Plaintiffs allege that, due to the Defendants' trespass, "numerous guests complained of poor service and Columbia failed to receive services [from its employees] for that period of time" during which the Defendants were at the hotel. (Am. Compl. ¶ 26.) Plaintiffs have not claimed, however, that they incurred monetary damages as a result of the Defendants' alleged trespass at the hotel on August 16, 2001. (See id. ¶¶ 27-30.) To the extent Plaintiffs seek to recover money damages on their trespass claim, they are precluded under § 301(b) for the same reasons applicable to the causes of action alleged in Counts II through IV.

or such conduct ***exceeds the scope*** of permissible conduct."[8] (Pl.'s Mem. Opp'n to Mot. for Summ. J. at 1 (emphasis added).) The Plaintiffs state that they "***believe*** that defendants were not acting in the capacity of union agents or [within] the scope of union agency," and they "***argue*** that the motive for [the Defendants'] actions on August 16, 2001, was not in furtherance of union representation." (Id. at 6 (emphasis added).) The Plaintiffs characterize the Defendants' conduct as an "outrageous intrusion," a "senseless disruption," and "outright defiant conduct." (Id.)

The parties' arguments under § 301(b) of the LMRA therefore boil down to whether the Defendants were acting as agents of Local 17 when they entered the hotel. Plaintiffs contend that the Defendants "have not shown that they were acting as union agents" (id. at 7) because their affidavits, which state that they were acting in that capacity when they went to the hotel, are "self-serving." Plaintiffs have presented no specific facts in accordance with Rule 56, however, that would support a finding that the Defendants were ***not*** either full-time employees of Local 17 on August 16, 2001, or acting as Union agents when they went to the hotel. The Plaintiffs assert that the Defendants exceeded the scope of their authority as agents of the Union because their conduct was "outrageous," "senseless," "defiant," and "extreme." The Plaintiffs have not, however, referenced any specific facts (presented to the Court through affidavits or

---

[8] The Plaintiffs provide no legal authority supporting this interpretation of § 301(b) of the LMRA.

otherwise as permitted by Rule 56) that would tend to support such a characterization of the Defendants' conduct.

Rule 56(e) states that

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ***the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts*** showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e) (emphasis added). A party cannot oppose a summary judgment motion with hyperbole. That, however, is precisely what the Plaintiffs have attempted to do here. The Defendants have presented evidence that they were union agents at the time they entered the Grand Hotel. The Plaintiffs have failed to give rise to a genuine issue of material fact on that issue as called for by Rule 56. Accordingly, the Court concludes that the Defendants are entitled to summary judgment on Counts II through IV of the Amended Complaint.[9] The Court finds it unnecessary to address the alternative arguments raised by the Defendants in support of the dismissal of Counts II through IV.

---

[9] The Plaintiffs argue that because (1) section 301(b) of the LMRA does not preclude injunctive or declaratory relief and (2) "it is clear that in that alternative, injunctive or declaratory relief is a proper remedy" (Pls.' Mem. Opp'n to Mot. for Summ. J. at 7), Counts II through IV should not be dismissed. Plaintiffs have included in their prayer for relief a boilerplate request for "such further and other relief as the Court may deem just and equitable." (Am. Compl. at 9.) The allegations in Counts II through IV, however, describe only past conduct. Plaintiffs have pleaded no ongoing wrong warranting prospective injunctive relief, nor have they adequately pled a claim for declaratory relief under federal or state law. Thus, it is far from clear that injunctive or declaratory relief is a proper remedy under Counts II through IV or that Plaintiffs should be permitted to proceed on those claims to obtain such relief.

## C. Dismissal of Count I of the Amended Complaint – Trespass to Land

The Defendants argue that Count I of the Amended Complaint, seeking injunctive relief for trespass, is preempted by the exclusive jurisdiction of the NLRB. In San Diego Building Trades Council v. Garmon, 359 U.S. 239 (1959), the Supreme Court held that state laws and regulations must yield to the NLRB "when ***it is clear or may fairly be assumed*** that the activities which a State purports to regulate are protected by § 7 of the [NLRA] or constitute an unfair labor practice under § 8." 359 U.S. at 244 (emphasis added). Furthermore, "[w]hen an activity is ***arguably subject*** to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." Id. at 245 (emphasis added). The Defendants assert that they had a right to be on the hotel premises pursuant to the visitation clause of the expired CBA. They further argue that the Plaintiffs' efforts to eject them unlawfully interfered with the rights of the hotel employees to meet with their union representatives. The Defendants therefore contend that their presence at the hotel on August 16, 2001, was arguably protected and arguably prohibited by the NLRA, and the Plaintiffs' ejection of the Defendants was arguably prohibited by the NLRA, and preemption under Garmon is appropriate.

In support of their argument that the trespass claim should not be preempted, Plaintiffs rely principally on Sears, Roebuck & Co. v. San Diego County District Council of Carpenters, 436 U.S. 180 (1978). In Sears, the employer sought and obtained an injunction to prevent union members from picketing on Sears' property. 436 U.S. at 183.

The Court observed that, as a matter of state law, the critical issue was the locating of the picketing, not the activity of picketing itself. Id. at 185. As a matter of federal labor law, however, the critical issue was the union's purpose in picketing: if the picketing was intended to secure the employer's compliance with area standards, it would be protected; on the other hand, if it was intended to coerce the employer into signing a pre-hire or "members-only" type agreement, it would arguably be prohibited under the NLRA's ban on recognitional picketing. Id. at 186. The Supreme Court observed that the evaluation of "whether the arguable illegality of the picketing as a matter of federal law should oust the state court of jurisdiction to enjoin its trespassory aspects" presents a separate question from "whether the arguably protected character of the picketing should have that effect." Id. at 190. Considering the arguable illegality of the picketing, the Court concluded that the controversy the employer might have presented to the NLRB is not the same as the controversy presented to the state court:

> If Sears had filed a charge, the federal issue would have been whether the picketing had a recognitional or work-reassignment objective; decision of that issue would have entailed relatively complex factual and legal determinations completely unrelated to the simple question of whether a trespass had occurred. Conversely, in the state action, Sears only challenged the location of the picketing; whether the picketing had an objective proscribed by federal law was irrelevant to the state claim. Accordingly, permitting the state court to adjudicate Sears' trespass claim would create no realistic risk of interference with the Labor Board's primary jurisdiction to enforce the statutory prohibition against unfair labor practices.

Id. at 198. Therefore, preemption of the trespass claim was not required. Id.

Plaintiffs contend that, as with Sears, the controversy presented by their state law

trespass claim is different from the controversy presented to the NLRB; hence, there is no risk of interference with the unfair labor practice jurisdiction of the NLRB.[10] Plaintiffs also contend that the NLRB Regional Director's decision to "dismiss the charges" brought by Columbia Park against Local 17, and vice versa, establishes that the conduct in question was neither protected nor prohibited by the NLRA; hence, there is no preemption under Garmon.

The instant case is distinguishable from Sears. Unlike the picketing activity in Sears, the presence of the union representatives at the hotel to meet with hotel employees is arguably privileged under a specific provision of the CBA negotiated by the employer and the Union. Furthermore, the parties in this action do not dispute that the union representatives were in the hotel to inform union members about the status of collective bargaining, a process central to federal labor law. See Sears, 436 U.S. at 190 (describing

---

[10] After learning that the Court would not have oral argument on the Defendants' motion, the Plaintiffs submitted a letter to the Court in which they argue, for the first time, that Garmon preemption cannot apply to ***Plaintiff 679 East Third's*** trespass claim because 679 East Third was not a party to the CBA. Plaintiffs claim that they did not raise this issue in their opposition memorandum because "the Defendants set forth no reasons for the dismissal of 679 in the Trespass to Land Count." (Apr. 3, 2002 letter from Wirth Companies to the Court at 1.) This contention is simply untenable in light of even a casual reading of the Defendants' opening memorandum, which clearly seeks dismissal of Count I as to ***both Plaintiffs*** on Garmon preemption grounds.

Even if one could excuse the Plaintiffs for failing to raise this argument in its opposition brief (and the Court finds no basis to do so), the Plaintiffs have provided no legal authority to support its assertion that 679 East Third Street's trespass claim is not subject to Garmon preemption. Plaintiffs having raised the issue under circumstances that could readily be described as "sandbagging," the Court is not inclined to do their legal research for them. The argument is deemed waived.

the NLRA as "an unequivocal national declaration of policy establishing the legitimacy of labor unionization and encouraging the practice of collective bargaining"). As for the actions of the Regional Director of the NLRB, the Court observes that "the [NLRB] may ... fail to determine the status of the disputed conduct by declining to assert jurisdiction, or ***by refusal of the General Counsel to file a charge***, or by adopting some other disposition which does not define the nature of the activity with unclouded legal significance." Garmon, 359 U.S. at 245-46 (emphasis added).

> [T]he failure of the Board to define the legal significance under the [NLRA] of a particular activity does not give the States the power to act. In the absence of the Board's clear determination that an activity is neither protected nor prohibited or of compelling precedent applied to essentially undisputed facts, it is not for this Court to decide whether such activities are subject to state jurisdiction.

Id. at 246. Here, Columbia Park and Local 17 filed an unfair labor practice charge with the NLRB. The Regional Director's office conducted an investigation. "If investigation reveals that there has been no violation of the National Labor Relations Act or the evidence is insufficient to substantiate the charge, the Regional Director recommends withdrawal of the charge by the person who filed. . . ." 29 CFR § 101.5

> If the complainant refuses to withdraw the charge as recommended, the Regional Director dismisses the charge. The Regional Director thereupon informs the parties of this section, together with a simple statement of the grounds therefor, and the complainant's right of appeal to the General Counsel in Washington, DC, within 14 days. If the complainant appeals to the General Counsel, the entire file in the case is sent to Washington, DC, where the case is fully reviewed by the General Counsel with staff assistance. Oral presentation of the appeal issues may be permitted a party on timely written request, in which event the other parties are notified and afforded a like opportunity at another appropriate time. Following such review, the General

> Counsel may sustain the Regional Director's dismissal, stating the grounds of affirmance, or may direct the Regional Director to take further action.

29 C.F.R. § 101.6. The letters from the Regional Director, consistent with the above-quoted regulations, advised Columbia Park and Local 17 of their rights to take an appeal to the NLRB's Office of General Counsel from the refusal to issue a complaint. (Goff. Aff. Ex. 2; Lutz Aff. Ex. 1.) It is unclear from the record whether either party has taken such an appeal. Where the NLRB refuses to assert jurisdiction for "policy" reasons -- as, for example, where the General Counsel refuses to issue a complaint because he is not convinced of the merits of the charge -- Garmon precludes action by state or federal courts because the NLRB's action does not define the activity "with unclouded legal significance." See Rudolph v. Wagner Elec. Corp., No. 71 C 717, 1972 WL 808 at *1 (E.D.Mo. Mar. 14, 1972). Thus, the Regional Director's actions do not preclude the application of Garmon preemption.[11]

## Conclusion

---

[11] Even if Garmon preemption did not apply to the trespass claim, the Court determines that the Plaintiffs have not pled a trespass claim upon which injunctive relief can be awarded. Under Minnesota law, a "[p]ermanent injunction is a proper remedy to restrain ***a continuous and repeatedly threatened trespass***." Theros v. Phillips, 256 N.W.2d 852, 859 (Minn. 1977) (emphasis added). Where the trespass is not continuous or repeatedly threatened, however, an award of damages -- actual or nominal -- is the only relief available. See Lake Mille Lacs Inv., Inc., v. Payne, 401 N.W.2d 387, 390-91 (Minn. Ct. App. 1987). The Amended Complaint identifies only the events on August 16, 2001, as the basis for their trespass claims. One discrete event of trespass cannot, under any definition, constitute a "continuous" trespass. Plaintiffs have not alleged either a continuous or a repeatedly threatened trespass such as would warrant injunctive relief.

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED** that the Defendants' Motion for Summary Judgment (Doc. No. 11) is **GRANTED**. The Amended Complaint (Doc. No. 9) is hereby **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 12, 2002

RICHARD H. KYLE
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995